UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENEE JOHNSON, for herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) 21 C 187 ) ) Judge Gary Feinerman |
| vs. | ) ) |
| CELLCO PARTNERSHIP d/b/a Verizon Wireless, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

In this suit against Cellco Partnership d/b/a Verizon Wireless, Renee Johnson alleges that she and other similarly situated Verizon employees were denied overtime pay in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. Doc. 77. Johnson moves under 29 U.S.C. § 216(b), as interpreted by *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989), for conditional certification of an FLSA collective. Doc. 94. The motion is granted, and notice will issue to prospective opt-in plaintiffs.

**Background**

At the conditional certification stage, the plaintiff bears a "modest" evidentiary burden, so the court relies on facts that Johnson has substantiated with affidavits or other evidence. *See Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012) (St. Eve, J.); *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 3d 930, 933 (N.D. Ill. 2008). Because the court does not make factual findings at this stage, *see Lechuga v. Elite Eng'g, Inc.*, 503 F. Supp. 3d 741, 743 (N.D. Ill. 2020); *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013), it need not belabor the factual background of the suit or detail Verizon's factual

1

submissions. Instead, the court hews generally to—without vouching for—Johnson's version of the facts, insofar as those facts find support in the evidence she provides.

Johnson was a Verizon employee for sixteen years. Doc. 95 at 2. She worked in a call center, where she would sit at her desk and handle a continuous stream of back-to-back customer service calls. *Ibid*. At the beginning of her shift, she would log on to the Verizon phone system, and only at that moment would Verizon begin to count her work time. *Id*. at 3.

Johnson alleges that Verizon compensates its call-center employees only for time spent logged on to the phone system. *Id*. at 2-4. But Johnson routinely performed work-related activities when not logged on. *Id*. at 7. Specifically, due to the pressure to spend all her scheduled shift time on calls with customers, essential administrative tasks—such as checking work emails, talking to supervisors and coworkers about work-related issues, and finishing paperwork—had to be handled either in the morning before her shift began, in the evening after it ended, or over her lunch break, during which times she was not logged on to the phone system. *Ibid*. Indeed, according to Johnson, if an employee did not spend that time catching up on her administrative responsibilities, it would have been impossible to remain in good standing with Verizon. *Id*. at 4-6. That off-the-clock time was not tracked by Verizon, and thus went unpaid. *Id*. at 7.

Johnson claims that she "personally observed dozens of [other Verizon call-center employees] doing these same things." *Ibid*. And she alleges that despite knowing about this untracked work, Verizon made no effort to track or compensate for it, in violation of the FLSA. *Ibid*.; *see Burlaka v. Contract Transp. Servs. LLC*, 971 F.3d 718, 719 (7th Cir. 2020) (Barrett, J.) (explaining that the FLSA "requires overtime pay for any employee who works more than forty hours in a workweek") (citing 29 U.S.C. § 207(a)(1)).

**Discussion**

The FLSA "gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other '"similarly situated"' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (quoting 29 U.S.C. § 216(b)). Unlike a class action under Civil Rule 23, "plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court." *Ibid*.

The FLSA itself does not provide a specific procedure for certifying a collective. *See Hollins v. Regency Corp.*, 867 F.3d 830, 833 (7th Cir. 2017). But courts have developed a standard "two-step process" for deciding whether an FLSA suit should proceed as a collective action. *Lechuga*, 503 F. Supp. 3d at 742 (internal quotation marks omitted); *see Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010) ("[T]he majority of courts … have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action.") (second alteration in *Smallwood*) (quoting *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008)); *see also Hoffmann-La Roche*, 493 U.S. at 170 ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.").

This suit is at the first step of that process: conditional certification. At this step, the court decides "whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). The second step occurs later, after the list of opted-in plaintiffs has been collected. At that point, the court "reevaluate[s] the

3

conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017) (St. Eve, J.).

The plaintiff's burden at the conditional certification stage is "lenient." *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 3d 759, 762 (N.D. Ill. 2004). She need only "make a modest factual showing sufficient to demonstrate that [she] and potential [collective members] together were victims of a common policy or plan that violated the law." *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1132-33 (N.D. Ill. 2017); *see also Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017) (same); *Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 841 (N.D. Ill. 2016) (same). The inquiry is not about whether members of the proposed collective have identical "job titles, functions, or pay." *Jirak*, 566 F. Supp. 2d at 849. The inquiry instead turns on: "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Mielke*, 313 F. Supp. 2d at 762.

Although not much is required of the plaintiff at this stage, she does have a burden to "provide some evidence in the form of affidavits, declarations, deposition testimony or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Nicks*, 265 F. Supp. 3d at 849 (internal quotation marks omitted). Still, at this point, "[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman*, 949 F. Supp. 2d at 855-56.

4

Johnson has satisfied her burden. Although she does not identify any other Verizon employees whose FLSA rights were allegedly violated, she claims to have witnessed others in the call center who, like her, performed uncompensated work while not logged on to the Verizon phone system. Doc. 95 at 6-7. It stands to reason, too, that if Verizon's compensation practices are what Johnson says they are, they would apply to everyone, not just to her. *See id*. at 11-13 (listing potential similarities between Johnson and other members of the proposed collective).

In opposing conditional certification, Verizon dives into detail about the varying job titles and responsibilities of its call-center employees. Doc. 102 at 2-8. But even if everything Verizon says is accurate, that only would limit the size of the collective; it would not demonstrate that Johnson was uniquely situated among those working in Verizon call centers and thus an inappropriate representative of a collective. And although Verizon argues that Johnson inaccurately describes its time-tracking practices, in doing so it generally acknowledges that those practices are uniform. *Id*. at 5-8.

Verizon offers three other reasons why, in its view, conditional certification should be denied. While Verizon's arguments carry some persuasive force as to the ultimate merits of this suit, they do not avail it at this juncture of the case.

Verizon first argues that Johnson is not similarly situated to the other employees in the proposed collective. *Id*. at 14-19. For instance, it puts forth a bevy of evidence calling into question whether Johnson herself is entitled to FLSA relief even under her own theory of the case. *Id*. at 14 (arguing that Johnson rarely clocked 35 or more hours in a week and thus has no FLSA overtime claim for most weeks, even assuming five hours of unpaid work); *id*. at 14-15 (arguing that Johnson could not generally have worked before the start of her shift because her timesheets demonstrate that she was usually late to work); *id*. at 15 (arguing that tollbooth

5

records from Johnson's end-of-day commute contradict her estimates of how much time she spent working after her shift); *id*. at 16 (arguing that Johnson could not have worked as much as she says over lunch because she reports that she usually left the office during the lunch hour). If true, perhaps those facts might raise typicality or adequacy problems for a potential class representative for a state law wage-and-hour claim under Rule 23, *see* Fed. R. Civ. P. 23(a)(3)-(4), but it is hard to see their relevance at the conditional certification stage. At most, they show that Johnson's damages might be limited as compared to other collective members. That is unimportant at this phase; what matters, rather, is that Johnson and other employees were allegedly subject to a common policy—not compensating call-center employees for pre- and post-shift work, resulting in the failure to pay appropriate overtime wages—that violated the FLSA. *See Grosscup*, 261 F. Supp. 3d at 870; *Bergman*, 949 F. Supp. 2d at 855.

Verizon has a good deal to say on that last point, providing ample evidence that purports to contradict Johnson's account of how Verizon tracks its call center employees' work hours. Doc. 102 at 16-22. That evidence, says Verizon, precludes conditional certification because it overwhelms Johnson's "vague, conclusory, or uncorroborated allegations" of an unlawful policy. *Id*. at 19. There will be an opportunity for Verizon to defend its practices, but now is not that time. As noted, it would be premature at this stage for the court to weigh competing evidence and make factual findings. *See Bergman*, 949 F. Supp. 2d at 855-56. For now, all that matters is that Johnson has put forth a modicum of evidence to support her claim that Verizon systematically undercompensated its call center employees in a manner that violated the FLSA.

Second, Verizon offers a slew of theories as to why different members of the proposed collective might have had different motivations for performing off-the-clock work. *Id*. at 22-25. That may be so, but it is no barrier to conditional certification. Again, the question here is

6

whether there is evidence showing that others may be similarly situated to Johnson. To the extent Verizon's arguments about dissimilarities among collective members are relevant to collective certification, they will be more appropriately vetted at the second stage of the process, once the court and the parties know the identities of the collective members whose similarities and differences must be analyzed.

Finally, Verizon contends that because Johnson "has no knowledge of the extent of any pressure felt by others in other departments, let alone whether or to what extent they worked off the clock," she cannot prove that they are similarly situated to her. *Id*. at 25. To Verizon's credit, this argument has less of a merits flavor than its other arguments, but it is premature all the same. Johnson submits that over her lengthy tenure with Verizon, she observed others engaging in the same workplace practices as she did, and for the same reasons. Doc. 95 at 6-7. In a footnote, Verizon cites two cases holding that the plaintiff must have "personal knowledge" of the circumstances of other collective members. Doc. 102 at 25 n.3 (citing *Pfaahler v. Consultants for Architects, Inc.*, 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000); and *Howard v. Securitas Sec. Servs., USA Inc.*, 2009 WL 140126, at *3 (N.D. Ill. Jan. 20, 2009)). But Johnson *does* have personal knowledge: she observed the same thing that happened with her happening with her colleagues. Verizon, understandably, is of the mind that Johnson could not have observed things that, it believes, never happened. Again, there will be plenty of time down the road for sorting out all of that—perhaps as early as the second stage of collective certification.

## Conclusion

Johnson's motion for conditional certification of an FLSA collective is granted. As Verizon does not challenge any aspect of Johnson's proposed notice, Doc. 95-1, the court approves her proposal and will issue her proposed order, which requires Verizon to provide her a

list of relevant employees.  See Lechuga, 503 F. Supp. 3d at 744 ("[B]ecause defendants offer no response at all to plaintiffs' request for an order: a) compelling defendants to identify to plaintiffs' counsel … all of the [potential collective members]; and b) directing issuance of [notice to those individuals], it is so ordered.").

July 7, 2021

_____
United States District Judge