**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **RENEE JOHNSON, for herself and all others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. 1:21-cv-00187** |
| **CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,** | ) ) ) | |
| **Defendant.** | ) ) | |

**JOINT MOTION FOR FINAL APPROVAL OF**
**CLASS AND COLLECTIVE ACTION SETTLEMENT**

<table>
<tr>
<td align="center"><b>ATTORNEYS FOR PLAINTIFF:</b></td>
<td align="center"><b>ATTORNEYS FOR DEFENDANTS:</b></td>
</tr>
<tr>
<td align="center">James B. Zouras<br>Teresa M. Becvar<br>STEPHAN ZOURAS, LLP<br>100 North Riverside Plaza<br>Suite 2150<br>Chicago, IL 60606<br>(312) 233-1550</td>
<td align="center">Elizabeth B. McRee<br>JONES DAY<br>77 West Wacker Drive<br>Suite 3500<br>Chicago, IL 60601<br>(312) 789-3939</td>
</tr>
<tr>
<td align="center">David J. Cohen<br>STEPHAN ZOURAS, LLP<br>604 Spruce Street<br>Philadelphia, PA 19106<br>(215) 873-4836</td>
<td align="center">Brian Jorgensen<br>Chelsea Till<br>JONES DAY<br>27272 N. Harwood Street<br>Dallas, TX 75201<br>(214) 220-3939</td>
</tr>
</table>

Renee Johnson ("Named Plaintiff") and Cellco Partnership d/b/a Verizon Wireless ("Defendant") respectfully submit this Memorandum of Law in support of their Joint Motion for Final Class and Collective Action Settlement Approval in the above-captioned case. As discussed throughout this filing, the Court should grant final approval to the Parties' proposed settlement because it reflects mutual compromises informed by diligent discovery efforts, is based on extensive, arm's-length negotiations and is not opposed by any Class Member after a robust, Court-approved notice process.

## I.    PROCEDURAL HISTORY

On December 7, 2018, Named Plaintiff and Angela Roper, a Verizon employee from Pennsylvania, commenced this action in the U.S. District Court for the Eastern District of Pennsylvania alleging claims against Defendant and Verizon Communications, Inc. ("VCI") (Defendant's corporate parent) under the FLSA and the wage laws of Illinois and Pennsylvania. *See* Complaint [Doc. 1]. On February 18, 2019, Defendants filed Answers that raised issues about whether the proper corporate entities had been named. *See* Answers [Docs. 8-9].

On May 10, 2019, Plaintiffs filed an Amended Complaint alleging claims against Defendant, VCI and Verizon Pennsylvania LLC ("Verizon PA"). *See* Am. Cpt. [Doc. 23]. On June 7, 2019, Defendants filed Answers to the Amended Complaint that challenged VCI's joint employer status. *See* Answers [Docs. 34-36]. At the same time, Defendants sought and received leave to engage on discovery on the issue of VCI's liability as a joint employer and move for judgment with respect to VCI's joint employer status. *See* Order [Doc. 33].

On December 2, 2019, VCI filed for summary judgment. *See* Motion [Docs. 42-43]. After the Parties completed joint employer discovery, Plaintiffs opposed VCI's motion on May 19, 2020. *See* Opposition [Doc. 62]. On December 4, 2020, the Court granted VCI's Motion and dismissed

Plaintiff's claims against VCI. *See* Dec. 4, 2020 Order [Docs. 66-67]. Thereafter, the Parties agreed, and the Court ordered, that Named Plaintiff's claims against Defendant should proceed separately for Illinois and Pennsylvania residents, and that Named Plaintiff would file a new Amended Complaint in Illinois presenting her Illinois claims. *See* Dec. 23, 2020 Order [Doc. 71].

On January 15, 2021, Named Plaintiff filed a Second Amended Complaint ("SAC") [Doc. 77]. The SAC asserts an FLSA claim for a Collective defined to include: "all full-time, hourly, phone-based Customer Service or Sales employees in Illinois who have worked for Defendant in any week during the maximum limitations period" (the "FLSA Collective"). *Id.* at ¶57 [Doc. 77]. The SAC asserts an IMWL claim for an Illinois Class defined to include: "all residents of Illinois who have worked for Defendant as a full-time, hourly, phone-based Customer Service or Sales employee in the past three years, but were not paid overtime wages for all of the pre-shift, meal break and post-shift work they performed" (the "Class Members" or the "Illinois Class"). On February 8, 2021, Defendant answered Named Plaintiff's SAC. *See* Answer [Doc. 82].

On March 15, 2021, Named Plaintiff filed a motion for FLSA conditional certification. *See* Motion [Doc. 95]. On July 7, 2021, after this motion was fully briefed, this Court authorized the dissemination of Notice to the putative FLSA Collective. *See* Jul. 7, 2021 Order [Docs. 118-119]. Between August 2021 and November 2021, Named Plaintiff filed Consent Forms for 113 Opt-In Plaintiffs ("Plaintiffs"). *See* Notices [Docs. 125-134, 140, 144]. In October 2021, the Parties filed a Joint Proposed Discovery Plan, the Court approved this Plan and the Parties began their class and merits discovery efforts. *See* Plan and Order [Docs. 142-143].

On December 7, 2021, the Parties reported that they had agreed to engage in settlement discussions. *See* Report [Doc. 145]. Thereafter, the Parties spent several months on informal, arm's-length settlement discussions, aided by the exchange of discovery on the Class Members'

3

work, time and pay records. *See* Declaration of David J. Cohen ("Cohen Dec."), ¶18 (Exhibit 1). During this period, the Parties agreed to engage Hon. Thomas J. Rueter (Ret.) for a private mediation. *Id*.

In late March 2022, the Parties submitted confidential mediation statements to Judge Rueter, presenting their analysis of the relevant evidence, key facts, litigation risks and damage calculations. *Id*. at ¶19. On March 31, 2022, the Parties participated in a full-day (over 8-hour) mediation session with Judge Rueter that involved extensive discussions about the nature, duration and timing of Plaintiffs' claimed off-the-clock work; the hardware, software, programs and systems used to perform this work; the scheduling, time and pay records Defendant maintained and how these related to Plaintiffs' claimed off-the-clock work; and the policies, procedures and systems Defendant maintained to track this work. *Id*. at ¶20. The Parties also engaged in extensive arm's-length negotiations about the merit and value of Plaintiffs' claims, the merit of Defendant's defenses and the material facts supporting risk assessments on both sides. *Id*. Ultimately, with Judge Rueter's assistance, the Parties were able to reach an agreement on multiple material terms supporting a settlement of Plaintiff's claims. *Id*. at ¶21. Between April 5, 2022 and April 28, 2022, the Parties drafted, negotiated and signed a Memorandum of Understanding commemorating their agreement and serving as a basis for their preparation of a formal settlement agreement, which all Parties signed on May 13, 2022. *Id*. at ¶22. *See* Apr. 12, 2022 Joint Report [Doc. 153]; Settlement Agreement (Exhibit 2).

## II.     THE PARTIES' SETTLEMENT AGREEMENT

Under the Parties' Agreement, Defendant will deposit $885,000.00 into a Qualified Settlement Fund ("QSF") administered by CPT Group, Inc. ("CPT"). *See* Settlement Agreement § IV(1) (Exhibit 2). Subject to Court approval, the Parties jointly propose to make the following

payments from this fund: $412,750.00 to provide payments to the 1,651 IMWL Class Members[1] ($250.00 each) and cover certain tax obligations associated with these payments; $127,200.00 to provide amounts allocated as back pay and liquidated damages to the 113 FLSA Opt-Ins[2] ($1,125.00 average) and cover certain tax obligations associated with these payments; $10,000.00 as an incentive award to the Named Plaintiff; $25,300.00 in cost reimbursements to Plaintiffs' counsel, including $20,500 in settlement administration costs; and $309,750.00 in attorney's fees to Plaintiffs' counsel. *Id.* at §§ IV(6)-(7).

No Opt-In Plaintiff or Class Member will have to return a claim form to receive their payment from the settlement fund and no part of the settlement fund will revert to Defendant under any circumstances. *Id.* at § IV(5)(h). Instead, any unclaimed funds remining in the QSF established to administer the settlement will be donated to the Illinois Bar Foundation.

In consideration for the payments she receives, Named Plaintiff will provide Defendant with a General Release covering any and all claims of any nature, known or unknown, contingent or accrued (except claims that cannot be waived) from December 7, 2015 through the final approval date. General Release (Exhibit 3). In consideration for the payments they receive, the 113 FLSA Opt-Ins who do not seek exclusion from the settlement will provide Defendant with a release of all federal claims that were brought or that could have been brought based on the allegations in the Second Amended Complaint from August 2, 2016 through the final approval

---

[1] The Class Members are defined as: "All people who have worked for Verizon Wireless as a full-time, hourly-paid, phone-based Customer Service, Sales, or Technical Support employee in Illinois from December 7, 2015 to the final approval date." *Id.* at § II.

[2] Half of the payments to the 113 FLSA Opt-Ins Illinois Class Members will be designated as non-wage earnings and reported on an IRS Form 1099 and half will be designated as wages, subject to applicable withholding and reported on an IRS Form W-2. *Id.* at § 6(c). Defendant's settlement fund payment also includes the employer's portion of any payroll taxes due on any payments made to the FLSA Opt-Ins and Class Members. *Id.* at § IV(6).

date. Settlement Agreement at § 4(a). In consideration for the payments they receive, the 1,651 Illinois Class Members who have not requested exclusion from the settlement will provide Defendant with a release of all state and federal claims that were brought or that could have been brought based on the allegations in the Second Amended Complaint from December 7, 2015 through the final approval date. *Id.*

## III.    THE SETTLEMENT NOTICE MAILING

The Settlement Agreement outlines a plan that permitted the Opt-In Plaintiffs and Class Members to evaluate the proposed settlement and make an informed decision about whether to participate. *Id.* at § IV(5). Under this plan, the Parties retained an administrator to mail a notice to all Opt-In Plaintiffs and Class Members that: describes Plaintiff's claims, the litigation, the FLSA Collective and the Class; describes the proposed settlement, including the monetary recovery to be awarded to the Opt-In Plaintiffs and Class Members and the scope of releases to be provided; identifies Plaintiff's Counsel and discloses the proposed attorney's fee and cost reimbursements; explains the Opt-In Plaintiffs' and Class Members' right to participate in, opt-out of, or object to the proposed settlement; describes the deadlines for, and procedures for participating in, opting-out of, or objecting to the proposed settlement and the consequences of each; and announces the time and location of the final approval hearing. *Id. See* Notice (Exhibit 4). To effectuate the notice process, Defendant agreed to provide the administrator with the last-known addresses of all Opt-In Plaintiffs and Class Members. *Id.* at § 5(a).

Following preliminary approval, Plaintiffs promptly retained CPT to administer the Notice mailing. Around June 7, 2022, Plaintiffs' counsel sent CPT the Court-approved Notice text and CPT used this text to prepare a formatted Class Notice. *See* Declaration of Jennifer Forst ("Forst Dec"), ¶¶3-4 (Exhibit 5).

Around June 14, 2022, Defendants' counsel sent CPT final data files containing 1,651 Class Members' names, last known addresses, phone numbers and other identifying information. *See* Forst Dec. at ¶5. CPT used this data to conduct a National Change of Address ("NCOA") search that located new or updated addresses for 168 Class Members. *Id*. at ¶6.

On July 1, 2022, CPT sent the Notice mailing by First Class U.S. Mail to all Class Members. *Id.* at ¶8. Thereafter, CPT tracked all returned Notice Packets, searched for updated addresses and made all possible re-delivery attempts. *Id.* at ¶¶9-10. CPT's efforts caused the Notice to be delivered to 1,621 (98%) of the 1,651 FLSA Collective and Rule 23 Class Members. *Id.* During the notice period, CPT answered communications from 14 Class Members seeking more information about the case or providing new address information. *Id.* at ¶11.

To date, CPT has received no objections to the settlement. *Id.* at ¶12. To date, CPT has received only two requests to be excluded from the settlement from Illinois Class Members. *Id.* at ¶13. To date, Class Counsel have not received any objections to the settlement, any requests to be excluded from the settlement, or any complaint about the terms of the settlement from any FLSA Collective or Rule 23 Class Member. Cohen Dec. at ¶23 (Exhibit 1).

These events demonstrate that the FLSA Collective and Rule 23 Class Members' due process rights have been fulfilled because the Court-approved Settlement Notice contained sufficient information to allow them to make an informed decision about whether to participate in the proposed settlement, CPT made reasonable efforts to disseminate notice of the proposed settlement, the FLSA Collective and Rule 23 Class Members had a reasonable period of time to evaluate the proposed settlement and decide whether to participate. Having completed the settlement notice process, 1,649 people (99.88% of the FLSA Collective and Rule 23 Class

Members) remain in the case and stand to benefit from the Parties' proposed settlement. *See* Forst Dec. at ¶14 (Exhibit 5).

## IV.  THE COURT SHOULD CERTIFY THE RULE 23 CLASS FOR SETTLEMENT PURPOSES

The Court has preliminarily certified the Rule 23 Class and FLSA Collective for settlement purposes. *See* May 23, 2022 Order at ¶2 [Doc. 161]. To grant final settlement approval, the Court must find that the proposed Settlement Class meets the requirements of Rule 23 by a preponderance of the evidence and that the proposed FLSA Settlement Collective merits final FLSA certification. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011).[3] In keeping with the litigation posture of this case, the bar for class certification sits lower than usual because the court need not consider any potential issues posed by managing the case through trial. *See T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, *5 (N.D. Ill. Mar. 25, 2022) ("case management and judicial economy concerns matter less when plaintiffs seek to certify a class for settlement purposes only).

### A.  The Proposed Class Satisfies The Requirements Of Rule 23(a) For Settlement Purposes

Under Rule 23(a), the party seeking certification must demonstrate that: the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the

---

[3] *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (recognizing lower standard for certification of a settlement class since there are no manageability concerns); *Newberg On Class Actions*, § 11:28 (4th ed.) ("Since *Amchem*, approval of settlement classes is generally routine and courts are fairly forgiving of problems that might hinder class certification were the case not to be settled").

class.  *See* Fed. R. Civ. P. 23(a); *Stone v. Signode Indus. Grp., LLC,* 2022 WL 909392, *2 (N.D. Ill. Mar. 25, 2022).  The Parties agree these requirements are satisfied for settlement purposes.

### 1. The Illinois Class is sufficiently numerous

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable."  *See* Fed. R. Civ. P. 23(a)(1).  In this Court, numerosity is determined by "the specific facts of each case and imposes no absolute limitations."  *Stone v. Signode Indus. Grp., LLC,* 2022 WL 909392, *2 (N.D. Ill. Mar. 25, 2022).  However, the numerosity requirement is satisfied when the putative class exceeds 100 members.  *Id.  See Kurgan v. Chiro One Wellness Ctrs. LLC*, 2014 WL 642092, *5 (N.D. Ill. Feb. 19, 2014).

Here, based on the information CPT secured from Defendant to complete the settlement notice mailing, the putative Rule 23 Class includes 1,651 members, meaning the Rule 23(a)(1) numerosity requirement is easily met.  *See* Forst Dec. at ¶5 (Exhibit 5).  Defendant does not challenge Plaintiffs' satisfaction of the numerosity requirement for settlement purposes.

### 2. The Illinois Class meets the commonality requirement.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  *See* Fed. R. Civ. P. 23(a)(2).  "Commonality requires that there be at least one question of law or fact common to the class."  *Stone*, 2022 WL 909392, at *2.  A common question may be shown where claims of individual members are based on the common application of a statute or where class members are aggrieved by the same or similar conduct.  *Id.  See Kurgan*, 2014 WL 642092 at *6.

In this case, Plaintiff alleges that the Class Members' claims present many common questions of law and fact, including: whether the Class Members were subject to materially-identical timekeeping and compensation policies; whether Defendant suffered or permitted the Class Members to perform any unpaid, off-the-clock, pre-shift, meal break and/or post-shift work

each day; and whether the Class Members have been properly paid for all of the work they actually performed, including all of their overtime work. *See* Conditional Certification Memo, pp. 2-8 (citing sources) [Doc. 95]. This "common nucleus of operative fact" easily satisfies the commonality requirement. *Stone*, 2022 WL 909392, at *2. Defendant does not challenge Plaintiffs' satisfaction of the commonality requirement for settlement purposes only.

### 3. The Illinois Class meets the typicality requirement

The third prerequisite is that the claims of the representative plaintiff be "typical" of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). Typicality only requires that the class representative's claims arise from the "same event or practice or course of conduct" as the class members' claims, or "are based on the same legal theory" as the class members' claims. *Stone*, 2022 WL 909392, at *2, *citing Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (typicality requirement should be "liberally construed").

Plaintiff asserts that Named Plaintiff's claims are typical of the claims belonging to the other Class Members, because they held similar full-time jobs, performed similar work using similar systems and programs, had their work tracked for payroll purposes in similar ways and now, in this case, claim to have regularly performed unpaid, off-the-clock work, plead the same claims and seek the same relief. *See* Conditional Certification Memo, pp. 2-8 (citing sources) [Doc. 95]. Plaintiff further asserts that, because the Named Plaintiff's claims "arise from the same event or practice or course of conduct" as the Class Members' claims and "are based on the same legal theory" as the Class Members' claims, the typicality requirement is met even though there may be some factual differences between the claims of individual Class Members. *See Stone*, 2022 WL 909392, at *2; *Moreno v. Napolitano*, 2014 WL 4911938, *9 (N.D. Ill. Sept. 30, 2014)

("[S]imilarity of legal theory may control even in the face of differences of fact"). Defendant does not challenge Plaintiffs' satisfaction of the typicality requirement for settlement purposes only.

### 4. Plaintiff and Class Counsel have adequately represented the Class

The representative parties of a class action are required to fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "The adequacy-of-representation requirement 'is composed of two parts: the adequacy of the Plaintiffs' counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.'" *In re AT&T Mobility Wireless Data Servs.*, 270 F.R.D. at 343. Here, both requirements have been met.

First, the Named Plaintiff has vigorously prosecuted this case for four years, does not obviously possess any interests that conflict with those of the Class Members, and has "a sufficient interest in the outcome of the case to ensure vigorous advocacy" for the Class. *Stone*, 2022 WL 909392, at *2. *See  Robles v. Corporate Receivables, Inc.*, 220 F.R.D. 306, 314 (N.D. Ill. 2004); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091, *5-6 (N.D. Ill. Dec. 1, 2000) (no antagonistic interest where plaintiff alleged same violation and remedy as the rest of the class).

Second, Plaintiffs' Counsel have significant experience in the prosecution of complex wage and hour actions and have been repeatedly approved to serve as lead or co-lead counsel in multi-state and nationwide class and collective actions. *See* Stephan Zouras Firm Profile (Exhibit 6). Plaintiffs' Counsel have performed independent investigations into the merit of Plaintiff's claims, researched the applicable law, invested substantial time and resources in this case, engaged in arm's-length negotiations with defense counsel and negotiated a detailed settlement that provides a significant, equally-distributed benefit to the entire Class, *see* Cohen Dec. at ¶24 (Exhibit 1), all of which demonstrate the adequacy of their representation. *See Stone*, 2022 WL 909392, at *2 (adequacy requirement satisfied where counsel have effectively

11

prosecuted [the] action"); *McCue* v. *MB Financial, Inc.*, 2015 WL 1020348, *2 (N.D. Ill. Mar. 6, 2015). Defendant does not challenge Plaintiffs' satisfaction of the adequacy of representation requirement for settlement purposes only.

### B. The Illinois Class Satisfies The Requirements Of Rule 23(b)(3) For Settlement Purposes

To support a grant of class certification for settlement purposes, it is also necessary to establish that this action meets one of the requirements of Rule 23(b). Here, the Parties submit that this action comports with Rule 23(b)(3) for settlement purposes. This rule provides that a class action may be maintained: "if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

### 1. The Illinois Class satisfies the predominance requirement

Rule 23(b)(3)'s predominance test focuses on the number and significance of common questions and "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *See* Moore's Federal Practice, § 23.45[2][a], pp. 23-219-220. The predominance requirement is met where a "common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Dennis v. Greatland Home Health Servs., Inc.*, 2022 WL 767228, *5 (N.D. Ill. Mar. 14, 2022).[4]

Here, Plaintiffs claim that their work involved the performance of common tasks (*i.e.,* reviewing e-mails from supervisors, work order e-mails, team e-mails and system update e-mails,

---

[4] *See T.K. Through Leshore*, 2022 WL 888943 at *5 ("the case management and judicial economy concerns at the heart of the predominance requirement matter less when plaintiffs seek to certify a class for settlement purposes only).

talking to supervisors and co-workers about work orders and other issues, problems and procedures and creating new work orders when requested work was not completed) that were not completed on the phone system that was used to track their work time for payroll purposes. *See* Am. Cpt. at ¶¶ 39-56 [Doc. 77]. As a result, Plaintiffs claim that Defendant did not track this work or pay any wages (including overtime premium wages) for it. *Id.* This "common nucleus of operative facts and issues" will determine the success of the Named Plaintiff's claims, the Opt-In Plaintiffs' claims and the Class Members' claims, demonstrating that common facts predominate in this action. *See, e.g., Dennis v. Greatland Home Health Servs., Inc*., 2022 WL 767228, *5 (N.D. Ill. Mar. 14, 2022) (predominance requirement satisfied by common questions around "whether Greatland was obligated to pay its clinicians overtime wages"). Defendant does not challenge Plaintiffs' satisfaction of the predominance requirement for settlement purposes only.

### 2.  The Illinois Class satisfies the superiority requirement

Rule 23(b)(3) requires the Court to find that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The relevant considerations include: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).[5] The superiority requirement is satisfied when "a class action would achieve economies of time, effort, and expense, and promote… uniformity of decision as to persons

---

[5]  *See T.K. Through Leshore*, 2022 WL 888943 at *6 ("Where plaintiffs seek to certify a class for settlement purposes only, trial-related concerns do not factor into a court's analysis of superiority"); *In re AT & T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 345 (N.D. Ill. 2010) ("pursuing this case as a class action will not present manageability problems because the class is being certified for settlement purposes only").

similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Driver v. AppleIllinois*, 265 F.R.D. 293, 304 (N.D. Ill. 2010), *quoting Amchem*, 521 U.S. at 615.

In this case, Plaintiff contends that allowing a class action is superior to other available methods for enforcing Plaintiff's rights. Based on a recent search of Illinois federal court filings, it appears that no other Cellco employee has filed a competing FLSA action relating to the facts and employees at issue in this matter since January 2021. *See* Cohen. Dec. at ¶25 (Exhibit 1). As a result, it appears that no individual Class Member has a substantial interest in controlling the prosecution of these claims. Further, the Parties have engaged in substantial discovery to inform the size, shape and value of Plaintiffs' claims and litigated several issues these claims present, demonstrating the advanced posture of this proceeding. It is also desirable to concentrate litigation relating to the Class Members' claims in this forum, because the Class Members performed the work at issue and earned the money sought by their claims in Illinois. As such, Plaintiff alleges that a finding of superiority is appropriate. *See, e.g., Berger v. Perry's Steakhouse of Illinois, LLC,* 2018 WL 1252106, *5 (N.D. Ill. Mar. 12, 2018); *Smith v. Adventist Midwest Health,* 2017 WL 8895628, *8 (N.D. Ill. Nov. 17, 2017), *report and recommendation adopted in part sub nom. Smith v. Adventist Midwest Health,* 2018 WL 948600 (N.D. Ill. Feb. 20, 2018). Defendant does not dispute the superiority of the class action mechanism in this case for settlement purposes only.

## V.     THE COURT SHOULD GRANT FINAL FLSA CERTIFICATION FOR SETTLEMENT PURPOSES

To approve this settlement, the Court must also find the FLSA Collective members' claims merit final FLSA certification. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011). In the Seventh Circuit, since the standards for Rule 23 and final FLSA certification have "largely merged," as a practical matter, where Rule 23 certification is proper, final FLSA

14

certification "is likely to be appropriate also." *Smith v. Fam. Video Movie Club, Inc.*, 311 F.R.D. 469, 474 (N.D. Ill. 2015).

The standard applied at the second/final FLSA certification stage considers whether the proposed collective is "similarly situated." *McAfee v. Hubbard,* 2017 WL 1479304, *2 (S.D. Ill. Apr. 25, 2017). The factors relevant to this inquiry include whether the individual plaintiffs present "disparate factual and employment settings," or are subject to individualized defenses and whether any "fairness and procedural considerations" counsel against certification. *McAfee,* 2017 WL 1479304 at *2. Where class members worked under similar employment circumstances and advance the same claims, and the defendant does not oppose final certification, courts typically grant final certification without an exhaustive inquiry. *Id. See McCue v. MB Fin., Inc.,* 2015 WL 4522564, *3 (N.D. Ill. July 23, 2015); *Zolkos v. Scriptfleet, Inc.*, 2015 WL 4275540, *3 (N.D. Ill. July 13, 2015). In this case, for settlement purposes only, Defendant does not challenge that Plaintiffs are "similarly situated."

## A. The FLSA Collective Members Worked In Similar Employment Settings

Plaintiff contends that the FLSA Collective members were all retained to perform the same job functions: to answer incoming phone calls from Verizon customers on Defendant's phone system and provide each caller with the customer service, technical assistance, or sales services they require. *See* SAC at ¶7 [Doc. 77]. Plaintiff further contends that the FLSA Collective members also all performed this work in Defendant's Illinois call centers. *Id.* at ¶16. As such, according to Plaintiff, the conditions under which the FLSA Collective members worked were, in fact, similar. Defendant does not dispute this contention for settlement purposes.

**B.** **The FLSA Collective members advance similar claims and seek substantially the same form of relief**

Plaintiff alleges that the FLSA Collective members worked under an array of common policies that, among other things, required them to track their work time on Defendant's phone system and caused them to be paid for the time they spent logged-in to the phone system. *See* SAC at ¶¶ 7-38 [Doc. 77]. As a result of these policies, Plaintiff claims that Defendant did not track, or pay overtime wages owed for, time the FLSA Collective members spent on work-related activities before logging-in to the phone system, during their unpaid meal breaks, or after logging-out of the phone system each day. *Id.* at ¶¶ 39-56. Thus, the FLSA Collective members also seek the same relief (*i.e.,* recovery of their unpaid overtime wages for pre-shift, meal break and post-shift work). *Id.*

This Court has repeatedly held Class-wide unpaid overtime claims to satisfy the "similarly situated" requirement in the settlement context. *See, e.g., Young v. Rolling in the Dough, Inc.,* 2020 WL 969616, *7 (N.D. Ill. Feb. 27, 2020); *McCue,* 2015 WL 4522564 at *3; *Zolkos*, 2015 WL 4275540 at *3. Final FLSA certification for settlement purposes is proper in this case because Plaintiff alleges that the evidence establishes that the FLSA Collective members worked in a similar setting, in similar jobs, under similar terms and conditions and seek similar relief, and Defendant does not contest whether the FLSA Collective members were, in fact, "similarly situated" for settlement purposes.

## VI. THE PARTIES' SETTLEMENT PROVIDES A FAIR RESOLUTION TO A *BONA FIDE* DISPUTE

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Chambers v. Together Credit Union,* 2021 WL 1948453, *2 (S.D. Ill. May 14, 2021) ("settlement of the complex disputes often involved in class actions minimizes

16

the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources"). *See Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"). While the settlement of any class action requires Court approval, *see* Fed. R. Civ. P. 23(e), and the decision to approve a proposed settlement is committed to the Court's sound discretion. *Pickett v. Simos Insourcing Solutions, Corp.*, 2017 WL 1433309, at *1 (N.D. Ill. April 18, 2017).

To determine if a proposed class action settlement is "fair, reasonable, and adequate," Federal Rule of Civil Procedure 23(e)(2) requires a court to consider several factors, including: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed. *In re TikTok, Inc., Consumer Priv. Litig.*, 2022 WL 2982782, *20 (N.D. Ill. July 28, 2022); *Chambers v. Together Credit Union*, 2021 WL 1948453, *2 (S.D. Ill. May 14, 2021).[6] In this case, the relevant factors support final approval.

It bears noting that district courts in Illinois have long held that a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement" – such as this one – that has been reached as a result of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *See Kaufman v. Am. Exp. Travel Related Servs. Co.*, 877 F.3d 276, 285 (7th Cir. 2017); *Hale v. State Farm Mut. Automobile Ins. Co.*, 2018 WL 6606079, *3 (S.D. Ill.

---

[6] The court should view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Further, strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997).

17

Dec. 16, 2018); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (internal citation and quotations omitted).

### A. The Strength Plaintiffs' Claims Balanced Against The Value Of The Settlement

The "most important" factor in the fairness inquiry asks the Court to balance the strength of the merits of Plaintiffs' case against the value that they receive from the settlement. *In re TikTok, Inc.*, 2022 WL 2982782 at *20. Thus, the Court is tasked with considering "the benefits of the monetary and injunctive relief to the classes against the risks and potential benefits of potential future litigation." *Id.* Where the procedural history of a case suggests a "vigorously negotiated settlement reached in good faith," this factor is typically satisfied. *In re TikTok,* 2022 WL 2982782, at *21.

Heading into the mediation, based on a thorough review and assessment of the available class-wide discovery, Plaintiffs' maximum damage analysis supported a $2.4 million settlement demand. Cohen Dec. at ¶26 (Exhibit 1). The Parties' negotiations concluded with an agreement to settle Plaintiffs' claims for $885,000.00. Settlement Agreement § IV(1) (Exhibit 2). Thus, the settlement negotiated in this case, if approved, will provide Plaintiffs with approximately 37% of their maximum damages. *Id.* The Parties' proposed settlement will pay $250.00 to each of the 1,649 Illinois Class Members without the need to participate in a claims process. *Id.* at ¶27. Based on a class-wide average hourly rate of $23.46, this payment represents 10.65 hours'-worth of wages. *Id.* The Parties' proposed settlement will also provide each of the 113 FLSA Plaintiffs (who returned a consent form to join the case, became party Plaintiffs, tolled the FLSA limitations period and subjected themselves to individual discovery) with an additional *pro rata* payment tied to their employment term during the relevant period, averaging $1,125.00. *Id.* These are clearly "nontrivial" sums that represent a material percentage of Plaintiffs' maximum possible damages

18

and reflect the substantial burden, delay and risk of proceeding with the litigation. *See In re TikTok,* 2022 WL 2982782 at *21 (approving settlement providing $163.13 payment to Illinois class members); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, *7 (N.D. Ill. May 14, 2019) (approving settlement providing $53-$74 per claim); *Steele v. GE Money Bank*, 2011 WL 13266350, *2 (N.D. Ill. May 17, 2011), *R&R adopted,* 2011 WL 13266498 (N.D. Ill. June 1, 2011) (approving settlement providing approximately $234 per claim).

As suggested, both Parties fully understood the substantial risks associated with future litigation. In the months leading up to their mediation, the Parties engaged in extensive discovery and arm's-length settlement discussions that allowed them to focus their positions. Plaintiff claims to have collected strong proof of her claimed wage violations, including: Plaintiff's testimony about her regular performance of unpaid pre-shift, meal break and post-shift work, extensive discovery demonstrating Defendant's use of common policies, procedures and systems, Plaintiff's testimony that she was paid only for hours spent logged-in to the phone system and proof that the Collective included full-time workers for whom any "off-the-clock" work could be claimed at an overtime premium rate. Cohen Dec. at ¶28 (Exhibit 1). During this same period, Defendant claims to have compiled strong proof that Plaintiff had not routinely worked 40-hour weeks, that it did not pressure employees to perform non-phone work, that it took steps to ensure employees did not perform "off-the-clock" work, that it paid employees for time not spent logged-in to the phone system and that it did not maintain any common unlawful policies, meaning the circumstances surrounding employees' unpaid work were the result of individual decisions, undermining class treatment. *Id*. These competing views of the case presented significant uncertainty on both sides and highlighted Plaintiff's concerns the Court may ultimately decertify the FLSA Collective or

refuse to certify the Illinois Class, or that a jury could find Defendant not liable for Plaintiff's alleged wage violations or determine that Plaintiffs had no actual overtime damages. *Id.* at ¶29.

During the Parties' full-day mediation with Judge Rueter, they engaged in extensive discussions about the nature, duration and timing of Plaintiff's claimed off-the-clock work, the hardware, software, programs and systems used for this work, Defendant's policies, procedures, systems and scheduling protocols, Plaintiffs' time and pay records and how all of these things related to Plaintiffs' claimed off-the-clock work and overtime claims. *Id.* at ¶30. The Parties also engaged in extensive arm's-length negotiations about the merit and value of Plaintiffs' claims, the merit of Defendant's defenses and the material facts supporting risk assessments on both sides. While the Parties agreed on several material terms during their mediation, they spent another six weeks negotiating and drafting their Settlement Agreement, all with Judge Rueter's oversight. *Id.* at ¶31. *See also* Plan and Order [Docs. 142-143]; Report [Doc. 145]; Apr. 12, 2022 Joint Report [Doc. 153]; Settlement Agreement (Exhibit 2). As a result of all these negotiations, Plaintiff understood that she faced a substantial risk of having her FLSA claim decertified, of being denied class treatment, of being unable to prove her claims on the merits or, even if she succeeded in all these things, of being unable to prove that she and her co-workers had been improperly denied overtime wages. Cohen Dec. at ¶31 (Exhibit 1).

Considering all of the facts and arguments both for and against a negotiated settlement, and weighing all of the risks associated with continuing the litigation, the Parties respectfully submit that their vigorously-negotiated $885,000.00 settlement provides a fair and appropriate balance between the merits and risks associated with Plaintiffs' claims and the value provided to the Class. *See In re TikTok,* 2022 WL 2982782 at *21; *Snyder*, 2019 WL 2103379 at *7; *Steele*, 2011 WL 13266350 at *2.

**B.** **The Complexity, Length, And Expense Of Further Litigation**

Complex, class-wide "wage and hour class and collective actions, such as this, are inherently complex and time-consuming" and involve complicated issues of fact and law. *Young v. Rolling in the Dough, Inc*., 2020 WL 969616, *4 (N.D. Ill. Feb. 27, 2020). It follows that "resolving these issues and the remaining discovery, procedural, merits, and damages questions would have been risky, costly, and time consuming." *Young*, 2020 WL 969616 at *4. The clear burdens, costs and delays associated with protracted litigation weigh in favor of approving the Parties' proposed settlement. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("to most people, a dollar today is worth a great deal more than a dollar ten years from now"); *Young*, 2020 WL 969616 at *5 ("Continued litigation would be difficult and complex, and this weighs in favor of the settlement"); *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort").

**C.** **The Amount Of Opposition To The Settlement And The Class Members' Reaction To The Settlement**

The Parties' joint submission clearly demonstrates their support for this settlement. Further, following CPT's dissemination of the Court-approved settlement notice to 1,621 of 1,651 Class Members, no Class Member submitted any objection to, or complaint about, the settlement and only two Class Members opted-out of the settlement. *See* Forst Dec. at ¶¶9-11, 13 (Exhibit 5). As a result, this factor weighs in favor of approval. *Young*, 2020 WL 969616 at *5; *McAfee v. Hubbard*, 2017 WL 1479304, *4 (S.D. Ill. Apr. 25, 2017) (approving settlement accepted by twelve of fifteen plaintiffs); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) ("the court may approve a fair settlement over objections by some or even many class members); *Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill*., 988 F. Supp. 1130, 1166, 1169 (N.D.

Ill. 1997) (same).

### D. The Opinion Of Competent Counsel

Counsel on both sides of this case have extensive experience in the litigation of complex wage and hour class and collective action cases. *See* Stephan Zouras Firm Profile (Exhibit 6) and Jones Day Labor & Employment Practice Info. (https://www.jonesday.com/en/practices/labor--employment?tab=overview). Counsel for both Parties believe the settlement they negotiated in this case is fair, adequate, reasonable and deserving of the Court's approval. As such, this factor weighs in favor of approval. *Young*, 2020 WL 969616 at *5; *Charvat v. Valente*, 2019 WL 5576932, *8 (N.D. Ill. Oct. 28, 2019).

### E. The Stage Of The Proceedings And The Amount Of Discovery Completed

As described at length above, the Parties engaged in three years of discovery and litigation on multiple issues before they agreed to discuss settlement in December 2021. *See* Complaint [Doc. 1]; Report [Doc. 145]. Thereafter, the Parties spent three months exchanging information and preparing for mediation and, after reaching an agreement in principle on several terms, spent two more months finalizing the settlement terms and drafting the Settlement Agreement, all under Judge Rueter's supervision. *See* Apr. 12, 2022 Joint Report [Doc. 153]; Settlement Agreement (Exhibit 2). These circumstances demonstrate that the Parties "exchanged sufficient information to fully evaluate the claims and defenses asserted in the case" such that these considerations weigh in favor of approval. *Young*, 2020 WL 969616 at *5; *Charvat v. Valente*, 2019 WL 5576932, *8 (N.D. Ill. Oct. 28, 2019) ("the parties have completed enough discovery to place a reasoned value on their respective positions and litigation risk"); *In re AT&T Mobility Wireless Servs. Sales Litig.*, 270 F.R.D. 330, 350 (N.D. Ill. 2010) (approving settlement where the parties conducted a thorough investigation of the background and facts pertinent to the claims).

## VII.    THE REQUESTED SERVICE AWARD IS FAIR

Service awards to representative plaintiffs lie within the discretion of the trial court, may be provided as a reward for efforts to benefit the class or collective they represent and are commonly-awarded in similar cases.  *See, e.g.*, *Briggs v. PNC Fin. Servs. Grp., Inc.,* 2016 WL 7018566, *3 (N.D. Ill. Nov. 29, 2016) (approving two $12,500 service payments in FLSA case); *Young v. Rolling in the Dough, Inc.*, 2020 WL 969616, *7 (N.D. Ill. Feb. 27, 2020) (approving $10,000 service payment in FLSA case); *Castillo v. Noodles & Company*, 2016 WL 7451623 (N.D. Ill. Dec. 23, 2016) (approving four $10,000 service awards in FLSA case).

Here, the Parties seek approval for a $10,000.00 service award to Named Plaintiff Renee Johnson.  This award is warranted because Ms. Johnson accepted substantial financial and reputational risks by stepping forward to commence this litigation and has supported this litigation for almost four years, providing information and declarations, participating in discovery, engaging in outreach to other Plaintiffs, remaining in contact with her counsel and otherwise supporting her claims.  *See* Cohen Dec. at ¶32 (Exhibit 1).  Further, in a case where the high-end Opt-In recoveries will be approximately $3,500.00, this award is not disproportional in light of the much more significant work Ms. Johnson has performed.  *Id.*  As such, the Parties respectfully submit that the requested service award is warranted.  *See Briggs,* 2016 WL 7018566 at *3; *Young*, 2020 WL 969616 at *7; *Castillo*, 2016 WL 7451623.

## VIII.    THE REQUESTED ATTORNEY'S FEE AND COST REIMBURSEMENT ARE FAIR AND REASONABLE

Finally, Plaintiffs ask the Court to approve payment of a $309,750.00 attorney's fee and a $25,300.00 cost reimbursement for representing them on a contingent basis, without receiving any payment of any amount from any source, throughout the entire four-year course of this litigation. *See* Agreement at § 7 (Exhibit 2).

23

### A.    The Requested Attorney's Fee Is Fair And Reasonable

From October 2018 to present (46 months), Stephan Zouras has spent 575 hours litigating this case.  *See* Cohen Dec. at ¶7 (Exhibit 1).  Billed at its customary, current rates which are between $225.00 per hour for paralegals to $750.00 per hour for the firm's most senior attorneys (over 25 years' experience), the total value of Stephan Zouras' lodestar in this case is $380,010.00, meaning the $309,750.00 attorney's fee sought in this settlement will provide a negative lodestar multiplier of approximately 0.815.  *Id.*  When the fee sought by a proposed settlement provides a "negative multiplier," many courts have found such fees to be *per se* reasonable.  *See, e.g., Corker v. Costco Wholesale Corp.,* 2022 WL 2509952, *1 (W.D. Wash. June 3, 2022) ("negative multiplier of 0.64 confirms the reasonableness of the requested fee"); *Norton v. LVNV Funding, LLC,* 2022 WL 562831, *12 (N.D. Cal. Feb. 24, 2022) (negative multiplier "strongly suggests the reasonableness of [a] negotiated fee"); *In re Valeant Pharm. Intl., Inc.,* 2022 WL 525807, *7 (D.N.J. Feb. 22, 2022) (negative multiplier "furnishes strong evidence that the requested fees are reasonable"); *Emeterio v. A&P Rest. Corp.,* 2022 WL 274007, *9 (S.D.N.Y. Jan. 26, 2022) (negative multiplier of 0.7 found to be reasonable); *Sonoma Sol LLLP v. Truck Ins. Exch.,* 2021 WL 5238711, *6 (D. Ariz. Nov. 9, 2021) (negative multiplier of 0.92 is "presumptively reasonable"); *In re CenturyLink Sales Practices and Securities Litig*., 2020 WL 7133805, *9 (D. Minn. Dec. 4, 2020) (fee resulting in a "substantial negative multiplier" is reasonable); *Taha v. Bucks County*, 2020 WL 7024238, *8 (E.D. Pa. Nov. 30, 2020) (fee with a negative multiplier "suggests that the fee request is reasonable"); *Domann v. Summit Credit Union,* 2020 WL 1847868, *2 (W.D. Wis. Apr. 13, 2020) ("negative multiplier" of 0.825 supports reasonableness of the fee request.

Because the statutes at issue expressly provide for the payment of reasonable fees to Class Counsel; Class Counsel provided contingent representation to Plaintiffs, accepting a significant risk of non-payment; Class Counsel have not received any payment for their work from any source for more than four years; the fee payment requested in this settlement represents a significant discount from the actual lodestar Class Counsel accumulated; no Class Member has objected to the proposed fee; and Defendants do not object to the fact or value of Plaintiffs' requested fee, the Parties respectfully submit that the requested $309,750.00 attorney's fee merits approval.

**B.    The Requested Cost Reimbursement Is Fair And Reasonable**

Both the FLSA and the IMWL authorize reasonable costs to employees whose rights are violated. *Cain v. Patel*, 2022 WL 1306304, *2 (S.D. Ill. May 2, 2022); *Guzman v. Laredo Sys., Inc.,* 2022 WL 971564, *10 (N.D. Ill. Mar. 31, 2022); *Hernandez v. Star View Enterprises, Inc.,* 2016 WL 2733283, *5 (N.D. Ill. May 11, 2016). *See* 29 U.S.C. § 216(b); 820 ILCS 105/12(a).

According to its contemporaneous billing records, Stephan Zouras has incurred "out-of-pocket" costs of $27,594.25 in this litigation. *See* Cohen Dec. at ¶14 (Exhibit 1). These costs are for claims administration, legal research, mediation, meeting, postage, pro hac vice, research, settlement notice and administration services since October 2018. *Id*. These costs were paid for the types of items a paying client would expect to be charged in litigation of this nature; paid to provide adequate representation to Plaintiffs and the Class members and diligently prosecute their claim; inured to Plaintiffs' benefit; and are not part of these firms' regular overhead or operating costs. *See* Cohen Dec. at ¶¶14-17. The requested $25,300.00 cost reimbursement will provide Class Counsel with a 91% recovery of their actual "out-of-pocket" costs, including all work performed (and to be performed) by the Settlement Administrator to prepare and distribute the settlement checks and prepare all required tax reporting forms. Because the applicable wage laws

expressly provide for reimbursement of case costs, the costs paid in this case are reasonable and fit within established parameters and Defendant does not object to the fact or value of this reimbursement, Plaintiffs respectfully ask the Court to approve this reimbursement.

## IX.    CONCLUSION

The Parties' proposed settlement was reached after extensive arm's-length negotiations by experienced lawyers.  It provides a fair result for the FLSA Collective and Rule 23 Class Members and has received their support.  The Parties have thoroughly investigated the issues of law and fact presented in this case and submit that their proposed settlement is favorable to the continued litigation of Plaintiffs' claims.   Nothing in the Parties' negotiations, or in the Settlement Agreement, provides any basis for doubting the fairness of their compromise.  For the reasons detailed here, and in the accompanying documents, Plaintiffs respectfully submit that the Parties' proposed settlement is reasonable and merits the Court's final approval.

Respectfully Submitted,

| | |
|---|---|
| */s/ David J. Cohen* | /*s/ Brian M. Jorgensen* |
| James B. Zouras | Elizabeth B. McRee (6275501) |
| Teresa M. Becvar | JONES DAY |
| STEPHAN ZOURAS, LLP | 77 West Wacker Dr., Suite 3500 |
| 100 North Riverside, Suite 2150 | Chicago, IL  60601 |
| Chicago, IL 60606 | (312) 789-3939 |
| (312) 233-1550 | emcree@jonesday.com |
| jzouras@stephanzouras.com | |
| | Brian Jorgensen |
| David J. Cohen | Chelsea Till |
| STEPHAN ZOURAS, LLP | JONES DAY |
| 604 Spruce Street | 2727 N. Harwood St. |
| Philadelphia, PA 19106 | Dallas, TX  75201 |
| (215) 873-4836 | (214) 220-3939 |
| dcohen@stephanzouras.com | bmjorgensen@jonesday.com |
| | ctill@jonesday.com |
| *Attorneys for Plaintiff* | |
| August 22, 2022 | *Attorneys for Defendant* |
| | August 22, 2022 |

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing pleading has been served on all counsel of record by electronically filing this document and all attachments *via* the Court's ECF system.

Dated: August 22, 2022          */s/ David J. Cohen*